UNION NATIONAL BANK OF CHICAGO

v.

LOUISVILLE, NEW ALBANY & CHICAGO RAILWAY COMPANY.

*Contracts—Procurement of Loan—Commission—Recovery of—Usury.*

1. Where persons have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking was reduced to writing, and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations, at the time when it was completed, or afterward, must be rejected.

2. In an action brought to recover a sum claimed to be due as commission for making a loan, a note having been given for the amount thereof, this court holds that evidence as to an alleged parol agreement as to a commission was inadmissible and declines to interfere with the judgment for the defendants.

[Opinion filed December 8, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. S. P. MCCONNELL, Judge, presiding.

Messrs. WILLITS, ROBBINS & CASE, for appellant.

Mr. GEORGE W. KRETZINGER, for appellee.

MR. JUSTICE SHEPARD. This is a suit in assumpsit, brought

450     APPELLATE COURTS OF ILLINOIS.

VOL. 46.] Union Nat. Bk. of Chicago v. L., N. A. & C. Ry. Co.

by appellant, a national bank, against appellee, an Illinois corporation, to recover $3,750. All the facts of the case are comprised within the following stipulation, upon which the cause was submitted to the court below, without a jury, and together with the notes mentioned, comprised all the evidence offered.

" On or about September 17, 1890, William L. Breyfogle, then president of the Louisville, New Albany & Chicago Railway Company, verbally arranged with the Union National Bank of Chicago for a loan of one hundred and fifty thousand dollars ($150,000) to said railway company, the repayment thereof to be secured by collateral security in the form of three hundred (300) bonds of the general gold bonds of the Louisville, New Albany & Chicago Railway Company, said bonds being in the denomination of one thousand dollars each.

"It was verbally agreed in this arrangement that the bank should discount from this one hundred and fifty thousand dollars interest at the rate of six (6) per cent per annum, and that Mr. Breyfogle, president of the railway company, should endeavor to secure the Chicago & Western Indiana Railway Company as a depositor with said Union National Bank, and in case he failed so to do, the said bank should have in lieu of such deposit a commission of two and one-half per cent upon said one hundred and fifty thousand dollars in addition to said six per cent thereon. The deposits of the Chicago & Western Indiana Railway Company would have been valuable to the said bank as a part of its business, and it declined to make the said loan, except upon the terms above stated.

" After this arrangement had been thus agreed upon, Mr. Lewis, the treasurer of the railroad company, filled out a note for one hundred and fifty thousand dollars, dated September 17, 1890, payable six months after date, to the order of the Union National Bank, describing the collateral security, and providing that after maturity the note was to draw interest at the rate of eight per cent per annum, a copy of which note is hereto attached and marked ' Exhibit A.'

" After this note had been duly prepared by Mr. Lewis and executed by the railroad company, he took the note to the bank, and the bank accepted said note and placed the amount thereof, less the interest for six months, at the rate of six per cent as above stated, to the credit of the said railroad company. Upon the maturity of said note said loan was extended for thirty days by a further note of the same amount prepared by Mr. Lewis in the manner as the first note was prepared and delivered by him, a copy of the said second note being hereto attached and marked ' Exhibit B.'

" Upon the delivery of this second note to the bank the first note was canceled in the following words: ' Union National Bank, Chicago, 23 March, 1891. Paid' and returned to the railroad company.

" Upon the maturity of this second note the same was paid to the bank by the treasurer of the railroad company according to its tenor and effect, and upon such payment said second note and the three hundred thousand dollars of bonds therein named as collateral security were returned to the said treasurer, as the proper officer of said railroad company to receive the same, and said second note was marked canceled and paid, as appears upon the copy thereof hereto attached. The Chicago & Western Indiana Railway Company was not secured as a depositor with the said bank, nor has any part of the said commission of two and one-half per cent been paid."

The exhibits referred to in the stipulation are, first (" Exhibit A "), a note of appellee for $150,000, bearing date September 17, 1890, and payable six months after date, to the order of appellant, and drawing interest after maturity at the rate of eight per cent per annum, and stamped " paid." " Exhibit B " is a note of appellee for like amount, bearing date March 20, 1891, and payable thirty days after date, to the order of the appellant, and drawing interest after maturity at the rate of eight per cent, which is also stamped " Paid."

The appellee pleaded the general issue and two special

452    APPELLATE COURTS OF ILLINOIS.

VOL. 46.]   Union Nat. Bk. of Chicago v. L., N. A. & C. Ry. Co.

pleas of usury under the act of congress establishing national banks, it being averred that under that act national banks can not receive from an Illinois corporation more than seven per cent per annum, and that the two and one-half per cent commission here sought to be recovered, added to the six per cent interest received by appellant upon the above note, constitute a rate of interest in excess of seven per cent.

The Circuit Court having found the issues for the appellee, the appellant, from a judgment in favor of defendant for costs, prosecuted this appeal.

The grounds here urged for reversal are:

1. That the Federal act referred to does not prescribe a rate of seven per cent on loans made in the State of Illinois to corporations.

2. If it did, the agreement here shown is not usurious.

We do not feel called upon to review the arguments of counsel as to whether or not the agreement between the parties in relation to the payment of a commission, as set out in the stipulation of facts, constituted a usurious contract, and one therefore not enforceable. The point is made that the note, being in writing, constitutes the sole contract between the parties, and no evidence of any contemporaneous verbal agreement is admissible to vary its terms.

The agreement to pay the commission was a part of the same arrangement under which the bank agreed to lend the money. The stipulation expresses that the bank declined to make the loan except upon terms which involved the payment of the commission.

There can be no doubt that the two and one-half per cent to be paid upon the $150,000 in case of a failure to secure for the bank the Western Indiana Railway Company as a depositor, was intended as an additional consideration for the loan beyond the specified rate of six per cent interest. It was, therefore, a subject that the terms of the note completely covered. The note for $150,000, dated September 17, 1890, was given in effectuation of the arrangement entered into for the loan, and when the note was delivered

and accepted, it being certain in all its terms, and expressive of a complete agreement between the parties, the conclusive presumption of law followed, that the whole terms of the agreement were correctly expressed in the writing. Abrams v. Pomeroy, 13 Ill. 133.

Nor do we think it makes any difference that there was no time specified in the original arrangement within which the deposit account of the Western Indiana Company should be secured, and therefore the law would allow a reasonable time for the doing of it, which would extend past the time of the giving of the note, before the additional two and one-half per cent could be demanded.

It was intended that the deposit account or its alternative, the two and one-half per cent commission, should be additional compensation for the loan, and the written contract or note failing to mention either one, but providing for the same subject and comprising a complete contract in that regard, as well as in all other respects, the presumption already stated follows quite as conclusively as if the securing of the deposit account had not been in contemplation by the parties.

It is unlike the cases cited by counsel where the executed final contract embraced only a part of the subjects covered by the original executory contract.

It is laid down in 1 Greenleaf on Evidence, Sec. 275, that, when parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking was reduced to writing, and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterward, must be rejected.

The Supreme Court and this court have repeatedly stated the same doctrine; and the rule is so old, so well established, and so consonant with reason and justice, as to render argument unnecessary.    Abrams v. Pomeroy, 13 Ill. 133; Harlow

v. Boswell, 15 Ill. 56; Winnesheik Ins. Co. v. Holzgrafe, 53 Ill. 516; Conwell v. S. & N. W. R. R. Co., 81 Ill. 232; Keegan v. Kinnaire, 12 Ill. App. 484; B. & O. R. R. Co. v. Brant, 17 Ill. App. 151; Hoag v. Carpenter, 18 Ill. App. 555; Union Nat. Bank. v. International Bank, 22 Ill. App. 652.

Evidence of the parol agreement of the parties was therefore inadmissible, and the judgment of the Circuit Court was right.

*Judgment affirmed.*